IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PATRICK J. DUNN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 17 C 8068 |
| ) | |
| NANCY A. BERRYHILL, Acting ) | Jeffrey T. Gilbert |
| Commissioner of Social Security, ) | Magistrate Judge |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Claimant Patrick J. Dunn ("Claimant") seeks review of the final decision of Commissioner of Social Security ("Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 6]. Claimant filed his Brief in Support of Reversing the Decision of the Commissioner of Social Security [ECF No. 15], which the Court will construe as a Motion for Summary Judgment, and the Commissioner filed a response [ECF No. 23]. This Court has jurisdiction pursuant to 42 U.S.C. §§ 1383(c) and 405(g). For the reasons stated below, Claimant's Motion [ECF No. 15] is denied, and the Commissioner's decision is affirmed.

### I. PROCEDURAL HISTORY

Claimant filed his claim for DIB on April 23, 2014, alleging a disability onset date of September 1, 2012. (R. 16.) Claimant meets the insured status requirements of the Social Security Act through December 31, 2017. (R.18.) Claimant's application for DIB was denied initially on September 11, 2014, and upon reconsideration on March 24, 2015, after which Claimant requested

a hearing before an administrative law judge ("ALJ"). (*Id.*) On September 12, 2016, Claimant, represented by counsel, appeared at a hearing before ALJ Robert M. Senader. (R. 22.) The ALJ also heard testimony from vocational expert ("VE") Glee Ann L. Kehr and Claimant's daughter, Anne Ocasio. (R. 16.)

On November 18, 2016, the ALJ denied Claimant's claim for DIB, based on a finding that he was not disabled under the Act. (R. 16-22.) The opinion followed the five-step evaluation process required by Social Security Regulations ("SSRs")[1]. 20 C.F.R. § 404.1520. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity ("SGA") since his alleged onset date of September 1, 2012. (R. 18.) At step two, the ALJ found that Claimant had the medically determinable impairments of noninsulin dependent diabetes mellitus, strains and sprains, and a mild cognitive impairment. (*Id.*) Also at step two, the ALJ determined that Claimant did not have an impairment or combination of impairments that significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; and, therefore, Claimant did not have a severe impairment or combination of impairments. (*Id.*) Because of this determination, the ALJ found that Claimant was not disabled under the Act. (R. 22.) The Appeals Council declined to review the matter on September 19, 2017, making the ALJ's decision the final decision of the Commissioner and, therefore, reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Baumhart*, 416 F.3d 621, 626 (7th Cir. 2005).

---

[1] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); *see* 20 C.F.R. § 402.35(b)(1). Although the Court is "not invariably bound by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. (*Id.*) Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his or her decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 42 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even where there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

# III. ANALYSIS

On appeal, Claimant argues that the ALJ erred in finding that Claimant had no severe impairment or combination of impairments at step two of the sequential evaluation process. [ECF No. 15] at 5. In addition, Claimant asserts that the ALJ improperly assessed his subjective symptom statements under SSR 16-3p. (*Id.* at 9.)

## A. Step Two of the Sequential Process

Under the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. 20 C.F.R. § 404.1520(a). Claimant contends that the ALJ erred at step-two of the sequential evaluation process when he determined that Claimant did not have a severe impairment or combination of impairments that significantly limited his ability to perform basic work-related activities. [ECF No. 15] at 4.

At step two of the five-step sequential evaluation, an ALJ is tasked with determining whether a claimant has a medically determinable impairment that is "severe" or a combination of impairments that are "severe." 20 C.F.R. § 404.1520(c). The Act defines an impairment or combination of impairments as "severe" if it significantly limits an individual's ability to perform basic work activities. Under step two, impairments are not "severe" when they do not significantly limit the claimant's ability to perform basic work activities, including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 C.F.R. § 416.921. The SSA has specified further that a non-severe impairment is "a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." SSR 96–3p, 1996 WL 374181, at *1 (July 2, 1996).

When evaluating the severity of an impairment, the ALJ assesses the functionally limiting effects of the impairment by evaluating the objective medical evidence and the claimant's statements and other evidence regarding the intensity, persistence, and limiting effects of the symptoms. (*Id*. at *2.) The Seventh Circuit has explained that the step-two determination is "a *de minimis* screening for groundless claims intended to exclude slight abnormalities that only minimally impact a claimant's basic activities." *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 697 (7th Cir. 2016) (quoting *Thomas v. Colvin*, 826 F.3d 953, 960) (7th Cir. 2016). Ultimately, it is "the claimant [who] bears the burden of producing medical evidence that supports [his] claim of disability." *Eichstadt*, 534 F.3d at 668.

In this case, the ALJ began his step-two analysis by finding that Claimant's mild cognitive impairment was a "non-severe impairment" and that Claimant did not present any physical impairment or combination of impairments that significantly limited his ability to perform basic work activities. (R. 18-20.) At the hearing, Claimant and his representative specifically disclaimed any challenge to the state agency's finding of non-severe physical impairments. Therefore, the ALJ's decision focused on Claimant's cognitive impairment. (R. 50-51.) The ALJ appears to base his conclusion regarding the limiting affects of Claimant's cognitive impairment on information from several sources. These sources include: (1) a MRI taken on November 19, 2015 MRI; (2) a consultative psychological examination performed by state agency physician Dr. Wurglitz; (3) the examination rerecords of Claimant's treating physician Dr. Grujic; and (4) the ALJ's own "Paragraph B" analysis.[2] (R. 20-21.)

---

[2] An ALJ will undertake a "Paragraph B" analysis when the Claimant has a medically determinable mental impairment. Paragraph B refers to section 12.00C of the Listing of Impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1, which lays out four broad functional areas used to assess the severity of a mental disorder. These four broad categories include: 1) activities of daily living; 2) social functioning; 3) concentration, persistence, or pace; and, 4) episodes of decompensation.

5

Claimant first argues that the ALJ did not evaluate the findings of the 2015 MRI of Claimant's brain and that the ALJ's decision contains no indication of how much weight was given to the MRI. [ECF. No. 15] at 7. The MRI, however, did not contain any additional information for the ALJ to analyze or weigh. The results of the MRI merely state that there is "right frontal encephalomalacia with a rim of hyperintense T2 signal which likely represents a rim of gliosis." (R. 333.) There is nothing in the MRI results about the functional severity of Claimant's impairment, or whether this impairment would affect his ability to perform basic work activities. (*Id.*)

In his reply brief, Claimant suggests that "right frontal encephalomalacia [] likely caused several motor or sensory deficits." [ECF No. 28] at 4. The Court, however, is not persuaded by this argument. S*ee Lopez v. Astrue*, 807 F. Supp. 3d 750, 763 (N.D. Ill. 2011) ("[Lawyers] are not allowed to play doctor with the record and to make medical determinations about the significance" of medical findings). Further, there was no "medical opinion" evidence contained in the MRI results. So, the ALJ was not required to assess or weigh any "medical opinions." *See* 20 C.F.R. § 404.1527(a) (defining medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairments"). Instead, in this case, it appears that the ALJ took the MRI for what it was, properly noted the results of the MRI, and nothing more is required. (R. 20.) This is especially true considering that the MRI results did not offer any additional information and the ALJ, like Claimant's counsel, is not allowed to play doctor with medical records. *See Simila v. Astrue*, 573 F.3d 503, 507 (7th Cir. 2009) (holding that an "[ALJ] must refrain from 'playing doctor,' properly evaluate the medical evidence and [its] credibility").

6

Next, Claimant argues that the ALJ erred by failing to note that state consultative psychological examiner, Dr. Wurglitz, recommended that Claimant be referred "to an appropriate medical specialist to determine the degree of disability associated with his physical symptoms." (R. 278-79.) Claimant, however, overlooks the fact that two state agency doctors had reviewed his medical records and the medical records of his own physician had been entered into the record for the ALJ's review. It is unclear what Claimant believes an additional doctor's opinion would provide in this case.

Both Claimant and his representative testified before the ALJ that they were not challenging as non-severe any physical aspect of Claimant's alleged disability and that "the cognitive issue is the chief issue." (R. 50-51.) As Claimant disclaimed any challenge to the state agency's finding that he did not have a severe physical impairment and three doctors concluded he did not have a severe cognitive impairment, an additional evaluation by another doctor would be of questionable value. Finally, Dr. Wurglitz's findings are worth noting as she found that Claimant had excellent short-term memory, good delayed memory, and superior immediate memory. (R. 278.) All these findings undercut Claimant's contention that his impairment is any more than mild and bolster the findings of his own treating physician. In addition, Claimant reported to Dr. Wurglitz that he engages in recreational activities, household chores, does his own shopping, and can drive a car. (R. 277.) All of Dr. Wurglitz's findings provide support for the ALJ's determination at step-two that Claimant does not have a severe impairment that would limit his ability to perform basic work activities.

The ALJ also relied upon the uncontradicted medical reports of his treating physician Dr. Grujic that Claimant has a *"mild* cognitive impairment." (R. 323.) (emphasis added.) An ALJ must give controlling weight to a treating physician's opinion if it is both "well-supported" and "not

7

inconsistent with the other substantial evidence" in the case record.[3] 20 C.F.R. § 404.1527(c)(2); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). Because a treating physician has "greater familiarity with the claimant's condition and circumstances," an ALJ may only discount a treating physician's opinion based on good reasons "supported by substantial evidence in the records." *See Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Here, the ALJ gave great weight to Claimant's treating physician, Dr. Grujic, who found that Claimant had a mild cognitive impairment. (R. 323.) Dr. Grujic opined that Claimant also had encoding and retrieval difficulties on a four-word test, but the ALJ did not identify any other functional limitations that Claimant experienced because of these difficulties. Claimant has not produced any contradictory medical evidence and the state agency doctors' conclusions are consistent with Dr. Grujic's opinion

Finally, the ALJ also evaluated Claimant's limitations using the "Paragraph B" criteria. In the first functional area, which is daily living, the ALJ found that Claimant had no limitation. The ALJ based his conclusion on Claimant's own function report, the function report of Claimant's daughter, and the consultative examination records of Dr. Wurglitz. (R. 21.) As Claimant states in his function report, he "makes breakfast for [himself] and three grandchildren, take[s] care of them – take[s] [the] 7 year old to school during school year." (R. 167.) Claimant's daughter, while noting difficulties in Claimant's memory, also states that Claimant "watches my three children [], prepares meals, takes [the] children to school, dr. appointments, etc." (R. 184.) Finally, as discussed above, Dr. Wurglitz's examination of Claimant revealed that Claimant can do many

---

[3] Last year, the Social Security Administration ("SSA") adopted new rules for agency review of disability claims involving the treating physician rule. *See* 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017). Because the new rules apply only to disability applications filed on or after March 27, 2017, they are not applicable in this case. *See id.*

activities of daily living independently such as shopping, household chores, and driving a car. (R. 277.) In this area, the ALJ supported his conclusion with substantial evidence.

The second functional area is social functioning. The ALJ relies on the reports of Claimant, Claimant's daughter, and Dr. Wurglitz to support his finding that Claimant has no limitation in social functioning. All three sources note that Claimant has no real restrictions in his social functioning (R. 166-74, 183-90, 275-79.) In fact, Claimant reported to Dr. Wurglitz that he enjoyed "reading, keeping up with the news, family activities, and enjoying friends." (R. 277.) As Claimant has not expressed difficulties in social functioning, and, if anything, has shown that he can function socially, the ALJ supported his decision with substantial evidence provided by the Claimant.

In the third functional area, which is concentration, persistence or pace, the ALJ found that Claimant had a mild limitation. The ALJ properly relied on Claimant's treating physician, Dr. Grujic, who found that Claimant had a "*mild* cognitive impairment." (R. 323.) (emphasis added.) In addition, Dr. Wurglitz ran several cognitive tests which found that Claimant was alert and oriented with excellent short-term memory, had a good fund of knowledge, manages financial matters independently, drives, shops, reads, and uses a computer. (R. 276-78.) Therefore, the ALJ supported his conclusion in this third area with substantial evidence based on Dr. Wurglitz's evaluation.

The last functional area of consideration is decompensation, and the ALJ noted that Claimant had experienced no episodes of decompensation and based his conclusion on Dr. Wurglitz's examination. (R. 22.) As Claimant has not made any claims of decompensation, the ALJ properly relied on Dr. Wurglitz's examination and Claimant's own mental health reporting to conclude that Claimant had not experienced episodes of decompensation. In sum, the ALJ properly

undertook the "Paragraph B" criteria analysis and supported his conclusion that Claimant does not have a severe impairment with substantial evidence.

For these reasons, the Court finds that the ALJ properly weighed the evidence in the record in this case as he is required to do. Claimant has not pointed to any evidence to rebut the ALJ's conclusion that Claimant had no severe impairment at step-two. *See Eichstadt*, 534 F.3d at 668 (7th Cir. 2008) (holding that the claimant "bears the burden of producing medical evidence that supports [his] claim of disability"). Therefore, the Court finds that the ALJ's determination that Claimant does not have a severe impairment is supported by substantial evidence in the record.

**B.    Subjective Symptoms Statement**

Claimant also argues that the ALJ erred by improperly dismissing Claimant's subjective symptoms statement. When evaluating a claimant's subjective symptoms, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano*, 556 F.3d at 562 (citations omitted); *see also* 20 C.F.R. § 404.1529(c); SSR 16-3p. An ALJ also may not discredit a claimant's testimony about his symptoms "solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562 (citing 20 C.F.R. § 404.1529(c)(2)); *see Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006) ("The administrative law judge cannot disbelieve [the claimant's] testimony solely because it seems in excess of the 'objective' medical testimony."). Even if a claimant's symptoms are not supported directly by the medical evidence, the ALJ may not ignore circumstantial evidence, medical or lay, which does support claimant's credibility. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539–40 (7th Cir. 2003). SSR 16-3p, like former SSR 96-7p[4], requires the ALJ to consider "the entire case record,

---

[4] In 2016, the Commissioner rescinded SSR 96-7p and issued SSR 16-3p, eliminating the use of the term "credibility" from the symptom evaluation process, but clarifying that the factors to be weighed in that

10

including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p, at *4.

The Court will uphold an ALJ's subjective symptom evaluation if the ALJ gives specific reasons for that finding, supported by substantial evidence. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). The ALJ's decision "must contain specific reasons for a credibility finding; the ALJ may not simply recite the factors that are described in the regulations." *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002) (citation omitted). "Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Id.*

In this case, the ALJ's assessment of Claimant's allegations regarding his cognitive impairments got off to a bad start. The ALJ stated that "the claimant's statements concerning the intensity, persistence and limits effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record...." (R. 20.) The Seventh Circuit routinely has condemned this language as "meaningless boilerplate" and "backwards analysis." *Stark v. Colvin*, 813 F.3d 684, 688 (7th Cir. 2016); *see also Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012) ("The present 'template,' . . . is even worse . . . ."); *Martinez v. Astrue*, 630 F.3d 693, 696 (7th Cir. 2011) ("There is no explanation of which of [claimant's] statements are not entirely credible or how credible or noncredible any of them are."); *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir.

---

process remain the same. *See* SSR 16-3p, 2016 WL 1119029, at *1, *7 (March 16, 2016). The ruling makes clear that ALJs "aren't in the business of impeaching claimants' character," but does not alter their duty to "assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).

2010) ("It is not only boilerplate; it is meaningless boilerplate.").

However, an ALJ's use of boilerplate language is not outcome-determinative if the ALJ engages in substantive analysis of the record evidence. *See Pepper v. Colvin*, 712 F.3d 351, 367–68 (7th Cir. 2013). In this case, the ALJ did engage in an analysis of the record evidence. The fact that the ALJ went on to perform a substantive analysis of the record belies Claimant's concern that the ALJ applied the wrong legal standard in his case. The record reveals that the ALJ properly assessed most of Claimant's testimony, assigned weight to various record sources, and came to his conclusion based on a substantive analysis of the record evidence. (R. 22.)

Claimant points out that the ALJ did not discuss the records from Bonton Stores where Claimant was employed from September 2010 until March 2012. [EFC No. 15] at 11. Claimant contends this evidence is "critical, perhaps determinative, because it demonstrates that [Claimant] missed more than 1 day per month and arrived late more than 2 time per month." [ECF No. 15] at 12. Claimant argues this is critical as the amount of time that Claimant missed work or was late for work is preclusive of all jobs in the national economy according to the VE's testimony and shows the intensity and persistence of Claimant's impairment.

This argument falls short for two reasons. First, the ALJ is not required to provide a complete written evaluation of every piece of evidence. *See Stephens v. Berryhill*, 888 F.3d 323, 329 (7th Cir. 2018). In this case, the ALJ cited numerous examples of normal functioning in his "Paragraph B" criteria analysis that demonstrated that Claimant's impairment ranged from "none" to "mild." (R. 20-1.) There is nothing in case precedent or the SSRs that requires an ALJ to discuss Claimant's termination from a previous job based on poor work performance as an additional example of impaired functioning. Second, and more significant, there is nothing in Claimant's employment or medical records that links Claimant's mild cognitive impairment to his poor work

12

performance. The ALJ properly relied on Claimant's treating physician, Dr. Grujic, in finding that Claimant only had a mild cognitive impairment with little functional limitations as this medical evidence was not contradicted by Claimant. (R. 22.) Without any record evidence connecting Claimant's impairment with his poor work performance, it was reasonable for the ALJ to rely on the uncontradicted medical records of Claimant's treating physician in making his determination.

Claimant also contends that the ALJ failed to analyze how Claimant's other impairments, such as a low vitamin B12 level and insomnia, may contribute to his cognitive impairments. [ECF No. 15] at 13. While Dr. Grujic opined that these other impairments and "aging on top of an old brain injury may account for the progressive nature of [Claimant's] symptoms," the ALJ is not required to address every piece of medical evidence (or, in this instance, a physician's conjecture) in the record. *See Stephens*, 888 F.3d at 329. Further, Dr. Grujic ordered no further testing based on this comment. The ALJ gave great weight, as the law requires him to do, to Claimant's treating physician who opined that Claimant had only a mild cognitive impairment and that Claimant's vitamin B12 deficiency and insomnia may be contributing to his cognitive difficulties. (R. 323.) However, even with these aggravating conditions, Dr. Grujic still concluded that Claimant's cognitive impairment was only mild. (R. 329.) The ALJ was not required to address every statement Dr. Grujic made given that his conclusion that Claimant's impairment was mild is substantial evidence to support a finding that Claimant does not have a severe impairment.

Finally, the uncontradicted opinions of the two state agency doctors, Dr. Madala and Dr. Bilinsky, bolster Dr. Grujic's finding as neither state agency doctor found that Claimant's other impairments contributed to his mild cognitive impairment. (R. 22.); *see Filus v. Astrue*, 694 F.3d 863, 867 (7th Cir. 2012) (holding that an ALJ may rely on a reviewing doctor's opinion that is not contradicted by any medical source.) Therefore, it was reasonable for the ALJ to discount the

Claimant's subjective complaints statement about his vitamin B12 deficiency and insomnia and the ALJ's decision is supported by substantial evidence.

For these reasons, the Court finds that the ALJ gave specific reasons for his symptom evaluation and that those reasons were supported by the record.

## IV. CONCLUSION

For the reasons stated above, Claimant's Motion for Summary Judgment [ECF No. 15] is denied, and the Commissioner's decision is affirmed.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: January 9, 2019